## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

| | | |
|---|---|---|
| **MICHAEL DELUCA AND DAWN DELUCA,** | ) | |
| | ) | **CIVIL ACTION** |
| **Plaintiffs,** | ) | **NO. 4:15-CV-40094-TSH** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ROBERT MERNER, JOHN DOE I BOSTON POLICE OFFICER, JOHN DOE II BOSTON POLICE OFFICER, AND JOHN DOE III BOSTON POLICE OFFICER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

### MEMORANDUM AND ORDER ON DEFENDANT ROBERT MERNER'S PARTIAL MOTION TO DISMISS (Docket No. 8)

### January 11, 2016

**HILLMAN, D.J.**

Michael and Dawn Deluca (Plaintiffs) brought this lawsuit against several Boston police officers after an unpleasant encounter following a Bruins game. One of the officers, Robert Merner (Defendant), moves to dismiss all claims against him. For the reasons set forth below, Defendant's motion is ***granted*** as to Counts I, III, and V, and ***denied*** as to Count IV. Count I is dismissed in its entirety, and Counts III and V are dismissed as to Robert Merner.

### Background

The following facts are taken from Plaintiffs' complaint and assumed true for the purposes of this motion. Michael Deluca is employed as a police officer by the City of Leominster Police

1

Department.  Dawn Deluca is Michael Deluca's wife.[1]  On the date relevant to this case, Defendant was employed as a Boston police officer.[2]  On June 7, 2013, Plaintiffs attended a Bruins game in Boston.  After the game, at around 10:40 p.m., they exited the venue with two friends.  It was raining.  The four began walking down the sidewalk toward Ace Tickets, where a live broadcast was taking place.  Mr. Deluca was holding a "professionally-made" Bruins sign.  He intended to hold up the sign and have it filmed on the broadcast.

Before arriving at Ace Tickets, Mr. Deluca was approached by an unidentified police officer (John Doe I) who had been walking in the street with a group of four or five other officers. John Doe I yelled at Mr. Deluca, "Get the fuck out of here!"  Mr. Deluca asked what he had done wrong, and John Doe I said, "I told you to get the fuck out of here."  Mr. Deluca said he was an off-duty police officer, and John Doe I asked for his identification.  As Mr. Deluca was reaching into his pocket, Defendant ran up to him from the group of officers and screamed in his face, "Didn't you hear what he said?  Get the fuck out of here, asshole!"  Defendant was standing close to Mr. Deluca and began poking him in the chest with his finger.  Then, Defendant "violently shoved" Mr. Deluca in the chest, causing him to stumble backwards but not fall.  Defendant also grabbed Mr. Deluca's shoulders.  Mr. Deluca told Defendant that he (Deluca) was "on the job," a phrase used by police officers to indicate to one another that they are police officers.  Defendant said, "I don't care if you 'are on the job,' get the fuck out of here before I arrest you."  Defendant then "violently stole" the Bruins sign out of Mr. Deluca's hands and threw it into the street.

Meanwhile, another officer was trying to calm Defendant, saying "hey, hey, hey, he's a cop."  One of the other officers from the group said, "Esposito, you're a fag," a comment directed

---

[1] At the time of the event that led to this lawsuit, Mr. and Mrs. Deluca were engaged.

[2] The John Doe Defendants were also employed as Boston police officers.

at Mr. Deluca, who was wearing a Phil Esposito jersey.  Another officer from the group (John Doe II) approached Mrs. Deluca and pushed her with both hands, while yelling "Get the fuck out of here."  Mrs. Deluca stumbled backwards and said, "Don't put your hands on me, I'm a professional, I'm a nurse, why are you doing this to us?"  The response was a loud "get the fuck out of here."  Another officer from the group (John Doe III) then got close to Mrs. Deluca's face and yelled "didn't you hear him? Get the fuck out of here."  John Doe II also told Mrs. Deluca that she would be arrested if she did not leave the area immediately.  Ultimately, Plaintiffs terminated the encounter by complying with the officers' demands and leaving the area.

Plaintiffs brought suit in Worcester Superior Court on May 15, 2015, alleging the following counts: "assault and battery / use of excessive force" on Mr. Deluca by Merner (count I); "assault and battery / use of excessive force" on Mrs. Deluca by John Doe II (count II); intentional infliction of emotional distress by all Defendants (count III); violation of Mass. Gen. Laws ch. 12, §§ 11H, 11I, by all Defendants (count IV); and conspiracy to deprive Plaintiffs of civil rights by all Defendants (count V).  Defendant removed the case to this Court and then moved to dismiss all counts against him (counts I, III, IV, and V).

### **Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "a plausible entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).  Although detailed factual allegations are not necessary to survive a motion to dismiss, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.  "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

3

In evaluating a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 68 (1st Cir. 2000).  It is a "context-specific task" to determine "whether a complaint states a plausible claim for relief," one that "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal citations omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).  On the other hand, a court may not disregard properly pled factual allegations, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556.

## Discussion

### A.  *Count I: Assault and Battery / Excessive Force*

Plaintiffs' complaint appears to allege that Defendant committed common-law assault and battery.  However, based on the parties' memoranda and the statements of Plaintiffs' counsel at oral argument, Plaintiffs view this claim as one for excessive force in the constitutional context.  Accordingly, this Court will analyze it as such.

"In addressing an excessive force claim brought under [42 U.S.C.] § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989).  "The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right . . . ." *Id.*  When "the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment," which protects against unreasonable searches and seizures of the person. *Id.*  If no specific constitutional

provision is applicable, then the more general "substantive due process" standard will apply to the excessive force claim. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (quoting *United States v. Lanier,* 520 U.S. 259, 272 n.7 (1997)); *see also Graham*, 490 U.S. at 395.

Thus, a threshold issue is whether Plaintiff's excessive force claim is covered by the Fourth Amendment. *See id.* If there was no search or seizure, there can be no Fourth Amendment violation. *See id.* A seizure of a person occurs when, "'by means of physical force or show of authority,'" an officer takes intentional action that "terminates or restrains [a person's] freedom of movement." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (quoting *Florida v. Bostick,* 501 U.S. 429, 434 (1991)) (citation omitted). "[W]henever a police officer accosts an individual and restrains his [or her] freedom to walk away, he [or she] has 'seized' that person." *Terry v. Ohio*, 392 U.S. 1, 16 (1968). Generally, "a seizure occurs if 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Brendlin*, 551 U.S. at 255 (quoting *United States v. Mendenhall,* 446 U.S. 544, 554 (1980)).[3]

Defendant argues that Mr. Deluca was never seized because he remained free to walk away from the encounter. Indeed, the officers were emphatically directing Mr. Deluca and his friends to *leave* rather than to stay. Plaintiffs, for their part, argue that Mr. Deluca was seized because one of the officers asked for his identification, and because he could not leave Mrs. Deluca "in the clutches of [a] crazed Boston police officer."

Even construing Plaintiffs' allegations in the most favorable light, Mr. Deluca was not seized. Defendant did not attempt to detain Mr. Deluca; rather, he asked him repeatedly to leave

---

[3] This Court is aware that, under certain circumstances, a seizure can be effectuated by an order to evacuate. *See Estate of Bennett v. Wainwright*, 548 F.3d 155, 172 (1st Cir. 2008). However, neither party has raised or argued the issue of whether Defendant's order for Plaintiffs to leave the area constituted a seizure. Therefore, I will address only the more traditional concept of seizure by detention.

the area.   Moreover, Mr. Deluca was asked for identification only after he told the officers that he was a police officer, in an attempt to be excused from their orders.  Regarding his concern for Mrs. Deluca, the factual allegations show that she too was free to leave and was encouraged to vacate the area.  Plaintiffs could have terminated the encounter at any point by leaving together.

Because there was no seizure, the excessive force claim must be analyzed under the Fourteenth Amendment substantive due process standard. *See Graham*, 490 U.S. at 395.  Under this standard, the relevant inquiry is whether the government has taken some action so egregious that it "shocks the conscience." *See Lewis*, 523 U.S. at 846-47 (citations omitted).  The factors relevant to this inquiry include: "the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Cummings v. McIntire*, 271 F.3d 341, 345 (1st Cir. 2001) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).  Here, although Defendants acted inappropriately, their conduct does not reach the standard for a substantive due process violation. *See, e.g., Cruz–Erazo v. Rivera–Montanez,* 212 F.3d 617, 623–24 (1st Cir. 2000); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

    B.  <u>*Count III: Intentional Infliction of Emotional Distress*</u>

Under Massachusetts law, a claim for intentional infliction of emotional distress (IIED) requires proof of the following elements: (1) that Defendant "intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." *Polay v. McMahon*, 10 N.E.3d 1122, 1128 (Mass. 2014).  "The standard for making a claim of intentional infliction of emotional distress is very high." *Id.* (quoting *Doyle v. Hasbro,*

*Inc.,* 103 F.3d 186, 195 (1st Cir. 1996)).   "Liability cannot be predicated on mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities, nor even is it enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Id.* (quoting *Tetrault v. Mahoney, Hawkes & Goldings,* 681 N.E.2d 1189, 1197 (Mass. 1997)) (quotation marks and citations omitted).   The conduct at issue must go "beyond all possible bounds of decency, and [be] regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Roman v. Trustees of Tufts College,* 964 N.E.2d 331, 341 (Mass. 2012)).   To be sure, it is deplorable conduct for on-duty police officers to swear repeatedly, hurl verbal insults, and shove civilians; but this conduct does not rise to the level of egregiousness required for IIED.

   C.  *Count IV:  Mass. Gen. Laws ch. 12, §§ 11H, 11I*

   In order to establish a claim under the Massachusetts Civil Rights Act (MCRA), Mass. Gen. Laws ch. 12, §§ 11H, 11I, a plaintiff "must prove that (1) [his or her] exercise [or] enjoyment of rights secured by the Constitution or the laws of either the United States or the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion."  *Roman*, 964 N.E.2d at 337 (quoting *Kennie v. Natural Resource Dep't of Dennis,* 889 N.E.2d 936, 940-41 (Mass. 2008)).

   The MCRA does not protect against direct violations of constitutional rights. *Longval v. Comm'r of Correction*, 535 N.E.2d 588, 593 (Mass. 1989); *see Sarvis v. Boston Safe Deposit & Trust Co.*, 711 N.E.2d 911, 918-19 (Mass. App. Ct. 1999).   Rather, the interference with the right must occur by means of threats, intimidation, or coercion. Mass Gen. Laws ch. 12, § 11H; *see Longval*, 535 N.E.2d at 593.   In this context, a "threat" is "the intentional exertion of pressure to

make another fearful or apprehensive of injury or harm." *Planned Parenthood League of Massachusetts, Inc. v. Blake*, 631 N.E.2d 985, 990 (Mass. 1994). "Intimidation" means to cause "fear for the purpose of compelling or deterring conduct." *Id.* "Coercion" is "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." *Id.* (quoting *Deas v. Dempsey,* 530 N.E.2d 1239, 1241 (Mass. 1988)).

Regarding the constitutional rights at issue in this case, Plaintiffs cite to articles I, X, and XIV of the Massachusetts Declaration of Rights, as well as the Fourth Amendment to the United States Constitution. Plaintiffs allege violations of their rights to move freely on a public sidewalk and to be free from unreasonable searches and seizures. Regarding the Fourth Amendment and article XIV, as explained above, Plaintiffs have not pled sufficient facts to show that they were seized. Moreover, the allegations relating to excessive force do not constitute MCRA claims because they are formulated as direct constitutional violations. *See Longval*, 535 N.E.2d at 593.

Plaintiffs' allegations regarding their rights to freedom of movement, however, bear more weight. The Supreme Judicial Court (SJC) has recognized that "the Massachusetts Declaration of Rights guarantees a fundamental right to move freely within the Commonwealth." *Com. v. Weston W.*, 913 N.E.2d 832, 840 (Mass. 2009). This right stems from article I and is necessary for the protection of other provisions of the Declaration of Rights, including article X. *See id.* at 840-41. The SJC has held that "the right to move freely and peacefully in public without interference by police" is "[i]nherent in the right to life, liberty, and happiness." *Id.* at 840.

Plaintiffs allege that Defendants shoved them, threatened to arrest them, and repeatedly yelled obscenities at them, for the purpose of forcing them to cease traveling in a particular direction on a public sidewalk. The right to move freely within the Commonwealth is far from

absolute, and the complaint suggests that the officers may have had legitimate reasons for ordering Plaintiffs to leave the area. *See Weston W.*, 913 N.E.2d at 841. However, looking only to the facts alleged in the complaint and drawing all reasonable inferences in Plaintiffs' favor, it is plausible that Defendant's threats, intimidation, and coercion interfered with Plaintiffs' exercise of their rights under the Massachusetts Constitution.[4] Accordingly, Defendant's motion is denied with regard to Count IV.

*Count V: Conspiracy to Deprive Plaintiffs of Civil Rights*

Finally, Plaintiffs allege that Defendants conspired to deprive them of their "civil rights." The parties' memoranda clarify that this claim is an allegation of a civil rights conspiracy under 42 U.S.C. § 1983. "A civil rights conspiracy as commonly defined is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.'" *Estate of Bennett v. Wainwright*, 548 F.3d 155, 178 (1st Cir. 2008) (quoting *Earle v. Benoit,* 850 F.2d 836, 844 (1st Cir. 1988)). "To demonstrate conspiracy under § 1983, plaintiff must show 'an actual abridgement of some federally-secured right.'" *Torres-Rosado v. Rotger-Sabat*, 335 F.3d 1, 14 (1st Cir. 2003) (quoting *Nieves v. McSweeney,* 241 F.3d 46, 53 (1st Cir. 2001)).

In Count V of their complaint, Plaintiffs cite to articles I, X, and XIV of the Massachusetts Declaration of Rights; yet, section 1983 does not provide a cause of action for violations of state constitutional rights. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49 (1999). The only federal law cited in count V is section 1983 which, of course, is not itself a provision of substantive

---

[4] Moreover, Defendant does not substantively address this issue in his memorandum, simply noting that "there is no case law" to support a "right to walk on a particular area of the sidewalk that the police had told [Plaintiffs] to move away from." (Docket No. 9 at 19.)

rights.  Moreover, as explained above, the remainder of the complaint fails to assert any violations of federal constitutional rights under the Fourth and Fourteenth Amendments.  Thus, Plaintiffs have not successfully articulated how Merner—by himself, let alone in concert with others—violated any federally protected rights.  Without such an allegation, there can be no civil rights conspiracy under section 1983.

## Conclusion

For the reasons set forth above, Defendant Robert Merner's partial motion to dismiss (Docket No. 8) is ***granted*** as to Counts I, III, and V, and ***denied*** as to Count IV.  Count I is dismissed in its entirety, and Counts III and V are dismissed as to Robert Merner.

**SO ORDERED.**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**